CITY OF COLUMBUS, *et al.*,

     *Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., *et al.*,

     *Defendants*.

Case No. 1:26-cv-2215

## DECLARATION OF DR. BETH OLLER

I, Beth Oller, declare as follows:

1. I am over 18 years old and competent to make this declaration. I have personal knowledge of the facts and information in this declaration. I respectfully provide this declaration to explain the devastating effects that the new Centers for Medicare & Medicaid Services (CMS) rule, "Patient Protection and Affordable Care Act, HHS Notice of Benefit and Payment Parameters for 2027; and Basic Health Program," would have on my medical practice, my patients, and my community.

2. I have a Bachelor of Science in Nursing from the University of Kansas and received my medical degree from the University of Kansas School of Medicine. I did my residency at the Wesley Family Medicine Residency Program in Wichita, Kansas. Since completing my residency more than fifteen years ago, I have practiced medicine in Rooks County, Kansas—a rural part of the state with approximately 5,000 residents. I have been a member of Doctors for America (DFA) since 2022.

3. As a family medicine physician, I care for patients of all ages. My daily practice involves everything from conducting yearly check-ups to treating common illnesses, such as

colds and the flu, to screening and treating for conditions such as high blood pressure or diabetes, to providing comprehensive reproductive healthcare and gender affirming care.

4. For more than a decade, I ran a small private practice that served Rooks County, Kansas. Practicing as a family medicine physician in a rural community like Rooks County means seeing many patients who are on Medicare, Medicaid, Affordable Care Act (ACA) plans, or who are uninsured—and many of whom have no other options in our rural community for getting the care that they need. Operating an independent practice became impossible in light of the insurance coverage and payment difficulties that are compounded in my rural community. For the last couple of years, I have practiced as a primary care provider at the Rooks County Health Center. I have a patient panel of more than 800 patients.

5. After the ACA was enacted in 2010, many patients gained access to health insurance that they could afford for the first time. The ACA had an especially positive effect in states like Kansas, which has not expanded Medicaid coverage, and in rural areas like Rooks County, where many residents are employed by small companies or self-employed, for example, as farmers or ranchers. As a result of getting affordable insurance through the ACA, many of my patients sought preventative care for the first time, which allows patients to identify potential health problems early and get the care they need before conditions become serious and require more acute or emergency care.

6. The new CMS rule would put many of those patients back in the position they were in before: unable to access affordable, comprehensive health insurance and therefore unable to get the preventative care that they need. Because of the administrative red tape that the rule would create and the ways it would limit coverage and ultimately increase costs for individuals, many of my patients would lose their insurance or have their coverage limited as a result of the rule.

7.      This rule would have a devastating effect on my practice and my community. Because many of my patients would become uninsured or underinsured, they would be more likely to opt out of critical preventative care services that my practice provides, hindering my ability to provide optimal care to my patients and jeopardizing their long-term health. For those services that we do provide, we would receive less compensation, as coverage becomes limited (meaning less reimbursement for medical services) and patients cannot pay (meaning no reimbursement for those who lose insurance). And all the red tape means our patients may not even be aware of the changes to their coverage until my practice seeks that reimbursement and it is too late.

8.      Patients who are uninsured or underinsured are also more likely to see family medicine physicians for conditions that may normally be provided by a specialist. I regularly perform minor procedures for which I cannot be reimbursed even if the patient is insured because of the barriers and limitations to coverage that the insurance-driven fee schedules create. For example, a patient's coverage may require a mole removal to be performed at a separate appointment from their wellness check, but that patient may not have the means or flexibility to travel to the clinic again for a follow-up appointment. Seeing a specialist is financially out of the question for many of my patients.

9.      Uninsured or underinsured patients who forgo or delay the preventive care for which they would normally see a family medicine physician end up with severe or chronic conditions that are not diagnosed or treated until they are forced to seek delayed, emergency care in the hospital. Because those patients are unable to pay, their time in the hospital is uncompensated care. The increase in uncompensated care ultimately increases the cost of healthcare. The increase in uncompensated and undercompensated care that the new rule would cause will force more hospitals and clinics to close, as providers will be unable to make a living,

3

especially in rural areas like mine.

10.     With an increase in uninsured patients, I will have to provide even more uncompensated care, at the expense of my private practice and the Rooks County Health Center. Overtime, this financial burden will lead to a decrease in my total compensation. I and other doctors in my position will likely look for new employment in non-rural areas with a higher insured population. This would require me to stop serving the population of Rooks County, Kansas. Leaving my current role with Rooks County Health Center would be the second time I left a job because practicing medicine became impracticable in light of insurance coverage issues. The departure of doctors like myself could have detrimental impacts on the health of rural residents who could lose proximate access to critical care.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

*Signature on following page.*

Executed on June 3, 2026 in Douglas County, Kansas.

BETH OLLER